## A05A1364. LINDSEY v. THE STATE.
(625 SE2d 431)

SMITH, Presiding Judge.

Sammy Lindsey was convicted by a jury of one count each of child molestation and aggravated child molestation. His motion for new trial, as amended, was denied, and this appeal ensued. In his sole enumeration of error, Lindsey contends that he was denied effective assistance of counsel. It appears that before informing either the prosecutor or defense counsel of its intentions, the trial court allowed a bailiff to communicate directly with the jury concerning the jury's legal question, outside the presence of Lindsey, his counsel, the trial judge, the prosecutor, or a court reporter. Upon learning of this process, Lindsey's trial counsel did not object. Even so, because we cannot conclude that Lindsey was unharmed by this procedure, we are constrained to reverse.

Lindsey's contentions are based on communications that he alleges occurred between the bailiff and the jury during deliberations. He points to the testimony of his trial counsel and of three jurors given during the hearing on his motion for new trial. One of the attorneys who represented Lindsey at trial testified that during deliberations, she was informed by the trial judge "that the jury had sent back a question regarding whether or not the verdict had to be unanimous." She testified that the judge "informed me that — of course, we all knew that the verdict would have to be unanimous, and that he had informed them of that fact," sending "word back through the bailiff." At the time of the conversation between counsel and the trial court about the jury's question and the judge's response, no court reporter was present, and counsel did not know whether the jury's question had been presented to the judge in writing. She acknowledged that she did not object to this process or "request that it be brought on the record." Nor did she move for a mistrial or ask that Lindsey "be brought in."

Three jurors testified concerning a question that arose during deliberations as to whether the verdict must be unanimous. One juror stated that when the question of unanimity was posed to the bailiff, the bailiff "went out and came back and said it had to be unanimous." The second juror testified that "[t]here were about four of us" who believed Lindsey to be innocent. He stated that the bailiff came into the room at some point "[a]fter he figured we had sat in there long enough to come up with the guilty or not guilty." He testified that upon entering the room, the bailiff asked whether the jury had reached a conclusion, and "some of them said guilty and some said not guilty." The bailiff left for a short time and on his return told the jury "it had to be the same vote," after which this juror changed his vote "[t]o guilty." This juror also testified that the bailiff told the jurors

that they "couldn't leave until everybody come to the . . . same conclusion." The third juror testified that when the bailiff returned to the jury room, she felt that she was being pressured and changed her vote.

Following the testimony of trial counsel and the three jurors during the hearing on Lindsey's motion for new trial, the trial judge stated that he had no independent recollection of the events discussed above and that he could merely describe his usual procedure. The judge noted that the bailiff's

> instructions from me is that if there is a question, the juror is to put it in writing, it is brought to me, I let counsel see the note or tell them I have a note and this is the question. We talk about what the proposed response is.

The court did recall one detail, adding, "The response in this one was a one word answer; yes. I remember writing yes, okay." No such written response appears in the record. He went on to discuss his normal procedure as follows:

> I would have written yes on a piece of paper, I would have handed it to the bailiff and he would have walked back and handed it to them, and that would have been the end of it. If anyone wanted it on the record and get everybody in the courtroom, that's what we would have done.

The bailiff, who was present during the jurors' testimony and the trial court's recitation of his usual courtroom practice, testified over Lindsey's objection. He too discussed his practice concerning jury questions. He stated that he usually had the jury place any question in writing and that he would then take the written question to the trial judge. The bailiff testified that whether the judge answered verbally or in writing "varies." He stated further that he did not recall receiving a question from the jury, either orally or in writing, and he denied pressuring the jury.

Lindsey contends that "trial counsel provided ineffective assistance . . . by failing to object to the process being used by the Court in responding to a juror's question, and allowing the bailiff, not the court, to communicate directly with the jury, and not having the process recorded, and in not moving for a mistrial based upon the court's response." We agree that reversal is required.

"Within the Georgia constitutional right to the courts is a criminal defendant's right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court." (Punctuation omitted.) *Carter v. State*, 273 Ga. 428, 429-430 (541

SE2d 366) (2001). Trial judges and bailiffs play critical roles in ensuring the sanctity of this right. The Georgia Supreme Court has stated that when communicating with a jury,

> the better practice is for the judge to have no communication with the jury on any subject except through the medium of the sworn bailiff in charge of the jury; and the communication should be restricted, in the absence of the accused and his counsel, to matters related to the comfort and convenience of the jury.

(Citations and punctuation omitted.) Id. at 430. Furthermore,

> [t]here should be no communication which would tend in any manner to prejudice the accused; and unless the character of the communication clearly shows that it could not have been prejudicial to the accused, the presumption of law would be that it was prejudicial. We state again: all communications with the jury are to be discouraged except in open court with all persons present.

(Citation and punctuation omitted.) Id.

The duties of bailiffs were more fully explained in *Turpin v. Todd*, 271 Ga. 386 (519 SE2d 678) (1999), as follows:

> The bailiff is the means by which the jury communicates with the trial court, but the bailiff is not permitted to act as an interpreter of the jury's questions and the trial court's answers. Under no circumstances may a bailiff answer jury questions related to the jury's decision-making process based on the bailiff's perception of the question, the law, or the evidence. In some instances, a bailiff's improper communication with the jury may infringe upon the accused's right to be present when the trial court takes action which materially affects the accused's case. *Where the bailiff's communication with the jury is, in effect, a supplemental charge, it is a communication which should have been delivered to the jury by the trial judge in open court in the presence of the defendant and defense counsel. The very nature of the bailiff's position serves to heighten the prejudicial potential a bailiff's communication may have on the jury.*

(Citations and punctuation omitted; emphasis supplied.) Id. at 389-390.

In *Carter*, supra, 273 Ga. at 429 (2), the jury sent out a question during deliberations. The question was not placed in the record. Id.

Apparently with the parties' agreement, the trial judge personally went to the jury room to tell the jury to continue deliberating. Id. The transcript of the conversation between the judge and the jury "show[ed] that the trial court went outside the bounds of that agreement." Id. The jury had not reached agreement on one count of the indictment and asked whether this count would be retried. The judge answered that the count would not be tried again. Id. The Georgia Supreme Court concluded that the communication between the judge and the jury failed to "show that it could not have been prejudicial to" the defendant. Id. at 430. In *Turpin*, supra, 271 Ga. at 388-389, rather than presenting the jury's question to the trial judge, the bailiff answered it himself. Id.

The facts of this case are different from those in *Carter* and *Turpin*. The trial judge here did not personally discuss the case with the jurors in the jury room, and the bailiff did not commit the clearly egregious error of answering the jury's question without first presenting it to the judge. Nevertheless, we are unable to conclude that the procedure used in this case was not prejudicial to Lindsey.

We do not presume here to make a factual finding as to what actually occurred in the jury room or to assess witness credibility or motivation. Nor do we intend by this opinion to reach or imply a conclusion concerning the integrity of any witness, including the bailiff. Whether written or verbal, the trial court's one-word affirmative reply to the jury's question was, of course, legally correct. The correctness of that response, however, is not the issue that concerns us. The issue we find troubling is the process by which the communication in this case occurred.

The trial court notified counsel of the jury's question and the response only after the question had been posed and the answer given. Then, having received this information from the trial judge, rather than attempt to make a record at a time when recollections of the judge, the bailiff, and the jurors would have been fresh, trial counsel raised no objection whatsoever. The testimony of the bailiff and the comments of the judge weeks after the trial indicate that the bailiff and the judge had only vague recollections of the circumstances surrounding the jury's question. The judge and bailiff appear as well to have had differing concepts of usual courtroom practice; while the judge commented hypothetically that jury questions and his replies would have been in writing and that the reply in this case in fact was in writing, the bailiff testified that questions and answers were sometimes relayed verbally through him and that he could not recall any question by the jury in this case.

The communication involved in this case was not restricted to matters concerning the jury's "comfort and convenience." (Citations and punctuation omitted.) *Carter*, supra, 273 Ga. at 430. Instead, the

information concerning the unanimity requirement could well be considered a supplemental charge, which should have been given in open court in Lindsey's presence. *Turpin*, supra, 271 Ga. at 390. If trial counsel had objected to the procedure used to answer the jury's question, or if some record had been made of the jury's question and the trial court's response had been made in open court with all parties present, vague recollections recorded weeks after trial would not be an issue. Given the legal nature of the question posed by the jury, the responsibility of trial judges and bailiffs to avoid improper communication with juries, and the state of the record in this case, we are unable to conclude that the communication here "could not have been prejudicial to" Lindsey. *Carter*, supra, 273 Ga. at 430. The trial court erred in denying Lindsey's motion for new trial.

*Judgment reversed. Ellington and Adams, JJ., concur.*

DECIDED NOVEMBER 23, 2005 —
RECONSIDERATION DENIED DECEMBER 15, 2005 — ■

*Buford & Buford, Floyd M. Buford, Jr.*, for appellant.
*Denise D. Fachini, District Attorney, Barbara A. Becraft, Cheri L. Nichols, Assistant District Attorneys*, for appellee.