**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 3, 2013**

# In the Court of Appeals of Georgia

A13A0663. BUCKNER v. THE STATE.                                JE-027C

ELLINGTON, Chief Judge.

A Spalding County jury found Christopher Buckner guilty of trafficking in a controlled substance, MDMA ("Ecstacy"), a violation of OCGA § 16-13-31.1 (e).[1] Buckner appeals from the order denying his motion for a new trial, contending that the evidence was insufficient, that his trial counsel was ineffective, and that the trial court erred in admitting his statement and in refusing to give a jury charge on equal access. Finding no reversible error, we affirm.

---

[1] The jury also found Buckner guilty of possession of MDMA (3, 4-methylenedioxyamphetamine) with the intent to distribute, OCGA § 16-13-30 (b), and possession of MDMA, OCGA §§ 16-13-30 (a), 16-13-25 (3) (A).

Viewed in the light most favorable to the jury's verdict,[2] the record reveals the following relevant facts. On April 28, 2007, while patrolling Interstate 75 in Spalding County, a Spalding County deputy noticed a car following a truck too closely. The deputy stopped the driver of the car, Buckner, with the intention of issuing him a warning. Buckner's girlfriend and her three-year-old child were in the back seat. The deputy testified that Buckner seemed very nervous and that he was breathing heavily and kept moving back and forth. While his partner was writing up the warning citation, the deputy asked Buckner for permission to search the car. Buckner responded by repeatedly stating that "we're church people; we don't mess around" and "we sing in a church band," which the deputy found suspicious. The deputy got his drug dog from his patrol car, walked the dog around Buckner's car, and the dog alerted on the driver's side door. The deputy then radioed for assistance.

Two deputies searched the car. One found a black plastic bag hidden beneath the passenger-side front seat. The bag contained 490 pills which tested positive for MDMA, which is also known by the street name "Ecstacy." The total weight of the pills was 142.84 grams. A deputy testified that, before anyone questioned Buckner

[2] *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

about the drugs, he volunteered that his girlfriend knew nothing about them. Moreover, he even offered to be an informant in exchange for leniency. Buckner later signed a written statement that his girlfriend "had absolutely nothing to do with the ecstacy pills seized from the vehicle." He also testified at trial that he did not believe that his girlfriend "had anything to do with" the drugs. However, Buckner insisted that one of the two officers who searched his car must have planted the drugs, and that he gave the written statement because the officers coerced him into doing so. Portions of the 40-minute video recording of the traffic stop and search were played for the jury.

1. Buckner contends that the trial court committed plain error in admitting his inculpatory statements without first conducting a hearing outside the presence of the jury to determine the voluntariness and admissibility of those statements.

Although defense counsel filed a generic "Motion to Suppress" the contraband seized from Buckner's car, including "all statements and testimony concerning the alleged contraband," Buckner's primary basis for suppression (and the only argument pursued in the hearing) was that the evidence was illegally seized in Henry County as opposed to Spalding County. Buckner did not file a motion in limine or a request for a *Jackson-Denno* hearing, and nothing in his motion to suppress identifies any

3

particular statement that he contends was inadmissible on the ground now asserted, that is, that it was involuntarily made. Moreover, counsel did not object to the introduction of Buckner's statements at trial. Rather, Buckner elected to testify on his own behalf, taking the position that the statements were coerced. Under the circumstances of this case, "due process does not require a voluntariness hearing absent some *contemporaneous* challenge to the use of the [statement]." (Citations and punctuation omitted; emphasis in original.) *Gamble v. State*, 235 Ga. App. 777, 783 (5) (510 SE2d 69) (1998). Having failed to make that challenge, any error is waived. Id.

Nevertheless, Buckner asserts that this Court should apply the plain error standard of review due to the alleged magnitude of the constitutional error. However, because Buckner was tried in 2008, the plain error analysis does not apply. As the Supreme Court of Georgia has explained, in appeals from criminal cases tried before January 1, 2013, plain error review is limited

> to alleged error in three circumstances: the sentencing phase of a trial resulting in the death penalty, a trial judge's expression of opinion in violation of OCGA § 17-8-57, and a jury charge affecting substantial rights of the parties as provided under OCGA § 17-8-58 (b). See *Williams v. State*, 291 Ga. 501 (2) (732 SE2d 47) (2012) (citing cases). The new Evidence Code will change this rule in cases tried after January

4

1, 2013, allowing a court to consider plain errors "affecting substantial rights although such errors were not brought to the attention of the court." OCGA § 24-1-103 (d); *Williams*, 291 Ga. at 505 (2).

*Durham v. State*, 292 Ga. 239, 240 (2) (734 SE2d 377) (2012). Because, under the circumstances, plain error review does not apply to the instant allegations regarding the improper admission of evidence, it provides no basis for concluding that the trial court committed reversible error in allowing the testimony. See id.

2. Buckner contends that the trial court's refusal to give his written request to charge on the law of equal access constitutes reversible error. We disagree. There was no evidence offered at trial demonstrating that anyone else had access to the drugs seized. Buckner testified that his girlfriend had nothing to do with the drugs that were in the car – a statement from which, incidently, the jury could reasonably infer that Buckner was aware of their presence. Further, the State did not rely on Buckner's ownership of the car to establish possession, and the jury was not charged on that presumption.

> [A] charge on equal access is appropriate to counter a jury instruction on presumption of possession, and is not necessary otherwise. Equal access is merely a defense available to the accused to whom a presumption of possession flows. Where the State did not show the indicia giving rise to the presumption, that is, ownership or exclusive control of the

5

vehicle, no presumption arose and therefore there was no triggering of the equal access defense.

(Citations and punctuation omitted.) *State v. Johnson*, 280 Ga. 511, 513 (630 SE2d 377) (2006). Because the requested charge was not adjusted to the evidence, the trial court was not required to give it. Id.

3. Buckner contends that he is entitled to a new trial because his trial counsel was ineffective in the three respects noted below.

Under *Strickland v. Washington*, 466 U. S. 668 (104 S Ct. 2052, 80 LE2d 674) (1984), to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. When reviewing the trial court's decision, this Court will accept the trial court's factual findings and credibility determinations unless clearly erroneous; however, we review legal principles de novo.

(Citations and punctuation omitted.) *May v. State*, 316 Ga. App. 403, 404-405 (2) (729 SE2d 545) (2012). Applying this standard, we address Buckner's claims.

Buckner contends that his trial counsel was ineffective because counsel (a) did not challenge the voluntariness of Buckner's statements in a pre-trial hearing, (b) did not pursue his motion to suppress the drugs seized from his car on the ground that he was illegally detained, and (c) did not preserve these claims of error for appeal. Other than making these broad allegations, however, Buckner makes no legal argument[3] demonstrating, with reference to the record, that his statements or that the evidenced seized from his car would have been suppressed had counsel taken these actions. "When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." (Citation and punctuation omitted.) *Rivers v. State*, 283 Ga. 1, 5 (3) (b) (655 SE2d 594) (2008).

Further, Buckner did not call his trial counsel as a witness at the motion for new trial.

---

[3] An assertion of error followed by a case citation is not legal argument. As we have explained, legal analysis "is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." *Dixon v. MARTA*, 242 Ga. App. 262, 266 (4) (529 SE2d 398) (2000).

7

> Where, as here, trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome [the presumption that counsel's choice was strategic.] Appellant thus made no affirmative showing that the purported deficiency in counsel's representation was indicative of ineffectiveness, as opposed to being an example of a conscious, deliberate and reasonable trial strategy.

(Citation and punctuation omitted.) *Newsome v. State*, 288 Ga. 647, 652-653 (4) (706 SE2d 436) (2011).

Buckner has not carried his burden of showing that a motion to suppress either his statements or the contraband would have been successful or that his alleged failure to pursue such motions was not the result of deliberate trial strategy. Consequently, we must conclude that the trial court properly found that trial counsel's representation of Buckner did not amount to ineffective assistance. See, e.g., *Rivers v. State*, 283 Ga. at 5 (3) (b); *Keaton v. State*, 318 Ga. App. 446, 448 (734 SE2d 220) (2012).

4. Buckner contends that the evidence is insufficient to support his conviction. He argues that the State failed to prove that he alone possessed the drugs or to rule out the reasonable hypothesis that the drugs belonged to someone else. Given Buckner's statement that his girlfriend had nothing to do with the drugs and his wish

to turn informant in exchange for leniency, as well as the evidence of Buckner's nervousness and the presence of the drugs in the car that he was driving, the jury could have concluded that there was no reasonable hypothesis that the crime could have been committed by someone else. See *Prather v. State*, 293 Ga. App. 312, 313-315 (1) (667 SE2d 113) (2008). The evidence adduced was sufficient to prove beyond a reasonable doubt that Buckner possessed the MDMA. See id. at 315.

Buckner also argues that, because the forensic chemist who testified as to the chemical composition of the pills only tested four of the 490 pills, "which [only] accounts for 1.16 grams of the 142.84 grams of the MDMA [he] is alleged to have possessed," the State failed to prove he possessed the requisite 28 grams of MDMA as asserted in the indictment.[4] Contrary to Buckner's argument, however, under Georgia law "the testing of representative samples is sufficient to support a conviction for trafficking in the entire amount." (Citations omitted.) *Salinas v. State*, 313 Ga. App. 720, 725 (2) (722 SE2d 432) (2012); see also *Rochefort v. State*, 279 Ga. 738, 740-741 (2) (620 SE2d 803) (2005) (testing of two of 2,329

---

[4] The indictment alleged trafficking in MDMA "as described in Schedule I." The Schedule I controlled substance is defined as "[a]ny material, compound, *mixture*, or preparation which contains any quantity of . . . 3, 4-methylenedioxyamphetamine[.]" OCGA § 16-14-25 (3) (A) (emphasis supplied).

9

pseudoephedrine tablets sufficient to support a conviction for possession of 300 such tablets in violation of OCGA § 16-13-30.3 (b) (1)). The jury was thus authorized to find that Buckner possessed 142.84 grams of MDMA, a finding which supports his guilt beyond a reasonable doubt on the trafficking offense. See OCGA § 16-13-31.1.[5] Consequently, we find no error.

*Judgment affirmed. Phipps, P. J., and Branch, J., concur.*

---

[5] OCGA § 16-13-31.1 provides, in relevant part, that anyone "who knowingly . . . has possession of 28 grams or more of . . . *any mixture* containing 3, 4-methylenedioxyamphetamine or 3, 4-methylenedioxymethamphetamine as described in Schedule I, in violation of this article commits the felony offense of trafficking[.]" (emphasis supplied.)